687 A.2d 328

YVETTE J. PAGAN, CLAIMANT–APPELLANT,
v. BOARD OF REVIEW, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 18, 1996—Decided January 22, 1997.

Before Judges KING, KEEFE and LOFTUS.

*Dawn K. Miller* argued the cause for appellant (Legal Services of New Jersey, Inc., attorney; *Ms. Miller* and *Melville D. Miller, Jr.,* on the brief).

*Ellen A. Reichart* argued the cause for respondent Board of Review (*Peter Verniero,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Lewis A. Scheindlin,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LOFTUS, J.A.D.

Yvette Pagan (Pagan), claimant, appeals from a decision of the Board of Review (Board) which affirmed a determination of the Appeal Tribunal which concluded she was disqualified from receiving unemployment benefits because she left work "voluntarily without good cause attributable to such work" contrary to *N.J.S.A.* 43:21–5(a). On this appeal, Pagan contends that the Board erred when it concluded that domestic violence which followed Pagan to her job did not constitute good cause for voluntarily leaving work. We conclude that there is no merit to this contention. We affirm.

█ Pagan was employed as a legal secretary for the Hackensack law firm of Breslin & Breslin, P.A. According to her she loved her job, enjoyed working with the employees and did not want to leave. The law firm also was satisfied with her work. One attorney said that her work was exceptional and her immediate supervisor stated that she was punctual, approached work with enthusiasm and energy, and exhibited ambition and willingness to meet new challenges. She was described as having a pleasant, outgoing, and supportive personality.

Unfortunately Pagan was the victim of constant abuse and harassment by her husband, Charlie Pagan. The harassment affected her ability to concentrate on the job and perform her duties. She sought family counseling at Family Services of Bergen County and other agencies. However, the abuse continued to escalate and culminated in an incident at home on August 8, 1994, which caused her to seek and obtain a restraining order against her husband. According to Pagan, he physically assaulted her, screamed at her, cursed her, pushed her, hit her, shook her by the arms and threatened to kill her. The temporary restraining order prohibited him from having any contact or communication with her or any members of her family, barred him from her place of employment, and granted her exclusive possession of their residence. The harassment and abuse continued. She filed a criminal complaint. On August 15, 1994, she obtained a final restraining order.

Pagan's domestic problems had an impact upon her work. She went to work the day after the August 8 incident but was distraught and feared for her life. Two days later, her husband called her constantly at work. Pagan concluded that she had no other choice but to leave the job and relocate to California near her family for protection. She explained to the office manager and Mr. Fitzpatrick, the attorney with whom she worked, that she could no longer work for the firm. She eventually left on August 19, 1994. She did not request temporary leave. As she testified at the hearing: "I really enjoyed the work and I hated that I had to leave." In her letter in support of the appeal from the initial determination, Pagan stated: "I did not voluntarily leave my place of employment but was forced to do so because of a life threatening situation which was effecting my job performance, my fellow employees as well as upper management."

On this record, the Appeal Tribunal concluded that Pagan was properly denied unemployment benefits pursuant to *N.J.S.A.* 43:21–5(a), which provides that a claimant will be disqualified for benefits if she "voluntarily leaves work without good cause attrib-

utable to such work." The hearing officer found that Pagan "left the work voluntarily because of an abusive spouse," although she "loved her job and would have stayed if she did not have an abusive spouse." Citing *Self v. Board of Review*, 91 *N.J.* 453, 453 *A*.2d 170 (1982), for the proposition that a "claimant who leaves work for a personal reason, no matter how compelling, is subject to disqualification," the hearing officer concluded that Pagan "left work voluntarily without good cause attributable to such work." The decision was upheld by the Board of Review, and this appeal followed.

In *Self v. Board of Review*, 91 *N.J.* 453, 453 *A*.2d 170 (1982), the New Jersey Supreme Court analyzed *N.J.S.A.* 43:21–5(a) and the cases interpreting it. The Supreme Court stated:

> Previously we have held that the purpose of the New Jersey statute "is to differentiate between (1) a voluntary quit with good cause attributable to the work and (2) a voluntary quit without good cause attributable to the work." *DeLorenzo v. Board of Review*, 54 *N.J.* 361, 363 [255 *A*.2d 248] (1969); *see Stauhs v. Board of Review*, 93 *N.J.Super.* 451, 457 [226 *A*.2d 182] (App.Div.1967). From that perspective, a departure not attributable to work is a "voluntary departure without good cause related to work" that will disqualify the employee from receiving unemployment benefits. *DeLorenzo v. Board of Review, supra*, 54 *N.J.* at 363 [255 *A*.2d 248]. The only recognized exception to that rule is where an employee is unable to work because of illness and attempts to protect her employment. *Id.* at 364 [255 *A*.2d 248].
>
> [*Self v. Board of Review, supra*, 91 *N.J.* at 457, 453 *A*.2d 170.]

The facts of this case demonstrate that Pagan left work because of personal reasons, not because of good cause attributable to work.

▉ Under our standard of appellate review, a decision of an administrative agency will not be reversed unless it is arbitrary, capricious and unreasonable or is unsupported by substantial credible evidence in the record as a whole. *Impey v. Board of Education*, 142 *N.J.* 388, 397, 662 *A*.2d 960 (1995) (citing *Dennery v. Board of Education*, 131 *N.J.* 626, 641, 622 *A*.2d 858 (1993)); *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587, 538 *A*.2d 794 (1988); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A*.2d 686 (1980) (citing *Campbell v. Department of Civil Serv.*, 39 *N.J.* 556, 189 *A*.2d 712 (1963)). The standard is not whether an appellate court would come to the same conclusion if the original

determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs. *Charatan v. Board of Review,* 200 *N.J.Super.* 74, 79, 490 *A.*2d 352 (App.Div.1985).

While we are sympathetic to Pagan's plight, and that of other domestic violence victims, our standard of appellate review is limited. *See State v. B.H.,* 290 *N.J.Super.* 588, 605, 676 *A.*2d 565 (App.Div.1996) (Loftus, J.A.D., dissenting), *certif. denied,* 146 *N.J.* 564, 683 *A.*2d 1160 (1996).[1] This court "should not assume the function of the Legislature and rewrite the law to include therein something which those charged with the legislative responsibility might have inserted if the matter had been called to their attention." *Thomas P. Carney Inc. v. City of Trenton,* 235 *N.J.Super.* 372, 381, 562 *A.*2d 807 (App.Div.1988). Our function is to enforce the legislative will as expressed by the clear language of the statute. *Howell Township v. Manasquan River Regional Sewerage Auth.,* 215 *N.J.Super.* 173, 181, 521 *A.*2d 858 (App.Div.1987).

We conclude that the decision in this case is supported by substantial, credible evidence in the record and was not arbitrary, capricious or unreasonable.

Affirmed.

---

[1] A notice of appeal concerning issues addressed in the dissent is still pending before the Court.